**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MELYNDA DUCHMANN and<br>DWAYNE DUCHMANN | §<br>§<br>§ | **PLAINTIFFS** |
| v. | §<br>§ | Civil No. 1:23-cv-261-HSO-BWR |
| STATE FARM FIRE AND<br>CASUALTY COMPANY | §<br>§<br>§ | **DEFENDANT** |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION [26] FOR SUMMARY JUDGMENT

Defendant State Farm Fire and Casualty Company moves for summary judgment in this insurance coverage dispute on grounds that Plaintiffs Melynda and Dwayne Duchmann lack expert testimony on causation necessary to establish that it failed to fully compensate for damage to their property caused by Hurricane Ida. Mot. [26]; Mem. [27]. In the alternative, State Farm seeks a partial summary judgment on Plaintiffs' claims for bad faith and extra-contractual damages. Mot. [26]; Mem. [27]. The Court finds that State Farm's Motion [26] for Summary Judgment should be granted.

## I. BACKGROUND

### A. Factual background

Plaintiffs Melynda Duchmann ("Mrs. Duchmann") and Dwayne Duchmann ("Mr. Duchmann") (collectively, "Plaintiffs" or the "Duchmanns") purchased a rental home (the "Property") in Picayune, Mississippi, at a foreclosure sale sometime between 2009 and 2011. *See* Mr. Duchmann Dep. [26-1] at 13. The Property is one of "[a]bout 50 to 60" rental homes the Duchmanns own. *Id.* at 73. They allege that they rented the Property until August 2021, when Hurricane Ida struck the area,

severely damaging the structure and its contents.    *Id.* at 12, 15-16; Compl. [1-1] at
2.  The tenants informed Mr. Duchmann that "[t]he roof blew off the house and
everything was wet inside the house.  The house was soaking wet, the ceiling, and
the floors and all that stuff."  Mr. Duchmann Dep. [26-1] at 19.  Mr. Duchmann
inspected the Property within a "day or two" of the storm and observed that most of
the roof shingles were gone.  *Id.* at 19-20.   Inside, the ceiling and floors were wet,
and the "walls had water where it had ran [sic] down the - - water had ran [sic]
down the walls and stuff."  *Id.* at 20.

 Plaintiffs maintained a "Rental Dwelling Policy" (the "Policy") with
Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm"),
Compl. [1-1] at 2; Policy [26-2], which "insure[d] for accidental direct physical loss to
the property described in Coverage A and Coverage B, except as provided in Section
I – Losses Not Insured," Policy [26-2] at 22.   Coverage A covered the dwelling, with
the exception of some land restoration not relevant here, *see id.* at 19, and Coverage
B covered "personal property owned or used by an Insured which is rented or held
for rental with the **residence premises**," *id.* (emphasis in original).

 Losses not insured under the Policy included loss to Property described in
Coverages A and B, "either consisting of, or directly and immediately caused by, one
or more of" certain causes, including wear, tear, and mechanical breakdown.  *Id.* at
22-23.   Nor did the Policy provide coverage for neglect, "meaning neglect of the
**Insured** to use all reasonable means to save and preserve property at and after the

time of a loss, or when property is endangered by a **Loss Insured**." *Id.* at 17 (emphasis in original).

Coverage C covered loss of rents, stating that "[i]f a Loss Insured causes that part of the residence premises rented to others or held for rental by you to become uninhabitable, we cover its fair rental value." *Id.* at 14. But the Policy did "not cover loss or expense due to cancellation of a lease or agreement." *Id.*

Under the loss settlement provision, State Farm would settle covered property losses for buildings under Coverage A at replacement cost without deduction for depreciation, with some qualifications. *Id.* at 19. For example, State Farm would "pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed . . . ." *Id.*

Plaintiffs allege that they "immediately took steps to mitigate their damages to the best of their ability," but that the damage from Hurricane Ida necessitated that the structure be "completely gutted." Compl. [1-1] at 2. They claim that they also experienced damage to contents and incurred additional living expenses. *Id.* They maintain that they promptly reported the loss to State Farm, which conducted a field inspection and then tendered "merely $8,680.79." *Id.* at 2-3.

The adjuster inspected the Property on October 14, 2021. Ex. [26-3] at 11-12. About one or two weeks after the inspection, he contacted Mr. Duchmann and informed him that "we'll pay for the roof, but that's all we're going to take care of." Mr. Duchmann Dep. [26-1] at 24. Mr. Duchmann maintains that the ceiling needed to be replaced in some spots and painted, but the adjuster informed him that "[a]ll

we're going to pay for is $200 to wash the ceiling." *Id.* According to Mr. Duchmann, he was "told by the A/C guy" that the heating, ventilation, and air conditioning ("HVAC") unit's "compressor burnt up or went out" due to "a surge or something to that affect" that occurred during Hurricane Ida. *Id.* at 29-30; *see id.* at 70-71. This was not covered by State Farm, which determined that "the cause of loss to the HVAC system is Wear and Tear." Ex. [26-6] at 3 (emphasis removed). Plaintiffs ultimately replaced the roof in March 2022, Mr. Duchmann Dep. [26-1] at 37, and the HVAC unit in August 2022, *id.* at 63-64.

B.   Procedural history

Plaintiffs filed suit in the Circuit Court of Pearl River County, Mississippi, on August 25, 2023, advancing claims against State Farm for breach of contract (Count I), bad faith breach of contract (Count II), intentional breach of contract (Count III), breach of the covenant of good faith and fair dealing (Count IV), negligent infliction of emotional distress (Count V), and wrongful denial or wrongful failure to adequately pay the claim (Count VI).[1] Compl. [1-1] at 1-6. The Complaint [1-1] demands "economic and non-economic damages, past, present, and future emotional and physical pain and suffering, contractual and extra-contractual damages, *Veasley* damages, punitive or exemplary damages, reasonable attorneys' fees, court costs, and/or other economic losses to be determined by a jury." *Id.* at 6-7; *see*

---

[1] The Complaint [1-1] refers to Count VI as one for "MISTAKE OR CLERICAL ERRORS." Compl. [1-1] at 6.

*Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290 (Miss. 1992).   State Farm removed the case to this Court, invoking federal diversity jurisdiction.  *See* Notice [1].

The Case Management Order [7] set a deadline for Plaintiffs to designate expert witnesses by April 3, 2024; State Farm's expert designation deadline was May 3, 2024.  *See* Order [7] at 4.   Plaintiffs did not, and to date have not, designated any expert witnesses.  After discovery concluded, State Farm filed the present Motion [26] for Summary Judgment, or alternatively, for partial summary judgment.  *See* Mot. [26]; Mem. [27].   State Farm insists that Plaintiffs lack expert testimony on causation and depreciation, warranting summary judgment on all claims.  *See* Mem. [27] at 9-17.   Even if summary judgment is not warranted on the coverage question, State Farm argues that it acted in good faith, warranting partial summary judgment on the claims for punitive and extra-contractual damages.  *See id.* at 18-26.

Plaintiffs respond that they have produced receipts for work performed for covered items, but that State Farm has not fulfilled its contractual obligation to pay the legitimate damages caused by Hurricane Ida, specifically damage to the roof, ceiling, floors, walls, and the HVAC unit.  *See* Mem. [30] at 2-4.  They posit that lay testimony offered on causation is sufficient to defeat State Farm's Motion [26], *see id.* at 6-7, but that even if expert testimony is required, Mr. Duchmann is qualified to offer such opinions, *see id.* at 7-8.   Plaintiffs do concede their claims for punitive damages but argue that they are entitled to extracontractual damages under *Veasley*.  *Id.* at 9-10 (citing *Veasley*, 610 So. 2d at 290).

5

State Farm replies that Plaintiffs have not presented evidence of causation sufficient to survive summary judgment and that Mr. Duchmann cannot offer expert opinion testimony because he was not designated as an expert.   Reply [32] at 1-3.   Nor can he offer lay opinion testimony under Federal Rule of Evidence 701 because he has no basis upon which to reasonably infer that Hurricane Ida caused the damages at issue.   *Id.* at 3-4.

## II.   DISCUSSION

A.   Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.'"   *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant carries its initial burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."   *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).   A court views all evidence in the light most favorable to the nonmovant and draws all reasonable inferences in his favor.   *Id.*   But if the nonmovant cites evidence that "is merely colorable, or is not significantly probative," summary judgment may

nevertheless be granted.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50

(1986) (citations omitted).

B.    Analysis

1.    Interpretation of insurance policies

The issue in this case is whether State Farm owed any additional insurance

proceeds to Plaintiffs under the Policy.  *Thomas v. Nationstar Mortg., LLC*, No.

2:22CV88-HSO-LGI, 2023 WL 2780360, at *9 (S.D. Miss. Feb. 6, 2023) (citing

*Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-cv-175-KS-MTP, 2015 WL 4915701, at *16

(S.D. Miss. Aug. 18, 2015)).  Under Coverages A, B, and C, Plaintiffs must initially

show an "accidental direct physical loss to the property described in Coverage A and

Coverage B . . . ."  Policy [26-2] at 22;[2] *see also Corban v. United Servs. Auto. Ass'n*,

20 So. 3d 601, 619 (Miss. 2009).

Where, as here, the Court exercises subject-matter jurisdiction under 28

U.S.C. § 1332, state law applies.[3]  "Under Mississippi law, the plaintiff bears the

burden of proving his right to recover under an insurance policy."  *Tuepker v. State*

*Farm Fire & Cas. Co.*, 507 F.3d 346, 356 (5th Cir. 2007).  In construing an

insurance policy, a court must "render a fair reading and interpretation of the policy

by examining its express language and applying the ordinary and popular meaning

---

[2]  Coverage C affords coverage for loss of rents "[i]f a Loss Insured causes that part of
the residence premises rented to others or held for rental by you to become uninhabitable . .
. ."  Policy [26-2] at 20.  Under the Losses Insured section, the Policy provides that "[w]e
insure for accidental direct physical loss to the property described in Coverage A and
Coverage B, except as provided in Section I – Losses Not Insured."  *Id.* at 22.  Thus,
Coverage C is contingent upon a loss under Coverage A or B.  *See id.*
[3]  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

to any undefined terms." *Corban*, 20 So. 3d at 609 (quotation omitted). "In Mississippi, insurance policies[ ] are contracts, and as such, they are to be enforced according to their provisions." *Id.* (quotation omitted). "[W]hen the terms of an insurance policy are unambiguous, they must be enforced as written." *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyds, London*, 612 F.3d 383, 386 (5th Cir. 2010).

2.     Plaintiffs' lack of admissible expert testimony on the issue of causation

a.     Insufficiency of lay testimony to establish causation

Plaintiffs seek recovery for repairs made to the roof, ceiling, floors, walls, ceiling, paint, and HVAC unit, totaling $146,283.63 above what State Farm has already paid, as well as loss of rents in the amount of $18,000.00. *See* Mem. [30] at 1, 4; Mr. Duchmann's Dep. [26-1] at 74. State Farm argues that Plaintiffs lack competent evidence to prove they are owed any additional contractual benefits, and that they cannot establish coverage without expert testimony on causation. Mem. [27] at 9-15. The Court agrees that Plaintiffs cannot carry their initial burden of proving their right to additional coverage with only the lay testimony proffered here. *See* Policy [26-2] at 22.

"[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *United States v. Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quoting Fed. R. Evid. 701, advisory committee notes to 2000 amendments). Expert

testimony "serves to inform the jury about affairs not within the understanding of the average man." *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993) (quotation omitted).

To establish that the additional losses are covered under the Policy, Plaintiffs must initially show an "accidental direct physical loss to the property described in Coverage A and Coverage B . . . ." Policy [26-2] at 22; *see also Corban*, 20 So. 3d at 619. "Loss" is not defined by the Policy, but the Mississippi Supreme Court has distinguished loss from damage. *Corban*, 20 So. 3d at 612. "A 'loss' is incurred by an insured and typically, but not always, follows 'damage' to his or her property," *id.*, and it "occurs at that point in time when the insured suffers deprivation of, physical damage to, or destruction of the property insured," *id.* at 613. "Loss to property can consist of many losses because property can consist of many elements, and 'loss' need not refer only to the totality of the damage and in fact should not when different forces have caused different damage." *Id.* at 614 (quotation and emphasis omitted).

This Court has explained how structural damages to homes, the long-term effects of moisture, and other categories of property damage require expertise to accurately understand, and are therefore not properly the subject of lay opinion on causation. *See Robinson-Lewis v. State Farm Fire & Cas. Co.*, No. 1:22CV186-LG-RPM, 2023 WL 7929006, at *2-4 (S.D. Miss. June 5, 2023) (granting summary judgment to insurer when the Court excluded the plaintiffs' expert on the cause of "any covered damage for which [the plaintiffs had] not been compensated," which

the plaintiffs claimed included covering the replacement of their roof, given the plaintiffs could not "demonstrate that State Farm breached the insurance contract without expert testimony"); *Parker v. State Farm Fire & Cas. Co.*, No. 2:22-CV-45-HSO-BWR, 2023 WL 4425599, at *3-4 (S.D. Miss. May 22, 2023) (granting summary judgment to insurer after excluding the plaintiff's expert on causation and scope of damages in a dispute about insurance coverage for damages from a windstorm); *O'Neil v. Allstate Prop. & Cas. Ins. Co.*, No. 5:17-CV-70-KS-MTP, 2018 WL 4001978, at *5 (S.D. Miss. June 25, 2018) ("[T]estimony regarding the causation of structural damage of this sort [i.e., property and foundation damages allegedly caused by a lightning storm or subsequent attempts to repair] exceeds the scope of permissible opinion testimony for lay witnesses because it requires specialized or technical knowledge, experience, or training."); *Palmer v. Sun Coast Contracting Servs., Inc.*, No. 1:15cv34-HSO-JCG, 2017 WL 3222009, at *2 (S.D. Miss. July 27, 2017) ("Plaintiffs offer no legal authority to support their position that they themselves as lay witnesses are qualified to offer opinions on causation as it pertains to [alleged mold, mildew, or termite damage] . . . because it is clearly based on scientific, technical, or other specialized knowledge within the scope of Rule 702."); *see also Hardin v. Town of Leakesville*, 345 So. 3d 557, 565 (Miss. 2022) (concluding that whether water seepage proximately caused damage to the plaintiff's home required specialized knowledge under Rule 702 because the plaintiff and her witnesses did not observe the water seepage); *Dewey St. Church of Christ v. Church Mut. Ins. Co.*, No. 2:19-CV-12-KS-MTP, 2020 WL 7133003, at *4

10

(S.D. Miss. Dec. 4, 2020) (holding that testimony that particular damage to a plaintiff's property was caused by a particular weather event "is outside the scope of permissible testimony for a lay witness because it requires specialized or technical experience, knowledge, or training" (collecting cases)).

Plaintiffs rely upon Mr. Duchmann's lay testimony concerning what the tenants told him following Hurricane Ida and what he observed at the Property "a day or two" after the storm. *See* Mem. [30] at 3-4 (quoting Mr. Duchmann's Dep. [29-1] at 19). According to Mr. Duchmann, the tenants reported that "[t]he roof blew off the house and everything was wet inside the house. The house was soaking wet, the ceiling, and the floors and all that stuff." Mr. Duchmann's Dep. [29-1] at 19. "[A] day or two" later, Mr. Duchmann inspected the Property and saw that

> [a]ll the shingles were off the house, and . . . some of the fascia was off of the house, soffit, just by looking at the outside of it. And this is a brick home, so the bricks were fine.

*Id.* Mr. Duchmann clarified that not every shingle was gone, but most of them were. *Id.* at 19. "[T]he deckboard was exposed, the decking was, in some spots," and "the ridge cap was completely off of the house . . . ." *Id.* Mr. Duchmann did not know the age of the roof, but stated that it had been "put on after [Hurricane] Katrina," and that he ultimately replaced the roof after the damage from Hurricane Ida. *Id.* at 20-21.

Mr. Duchmann acknowledged that he did not observe the immediate effects of Hurricane Ida. *But see* Fed. R. Evid. 701(a) (providing that lay "testimony in the form of an opinion is limited to one that is . . . rationally based on the witness's

perception"). In fact, Mr. Duchmann stated that prior to Hurricane Ida, he had not been inside the Property since 2015 or 2016, Mr. Duchmann's Dep. [26-1] at 18, five or six years before the storm struck, *see id.* Nor have Plaintiffs cited any evidence that Mr. Duchmann had visited this specific property within that time. *See id.*; Resp. [29]; Mem. [30]. This reveals Mr. Duchmann's lack of personal knowledge as to the Property's condition immediately before the storm, *see* Mr. Duchmann's Dep. [26-1] at 15-16, 18, rendering his lay testimony insufficient to demonstrate that Hurricane Ida caused an "accidental direct physical loss to the property described in Coverage A and Coverage B" beyond the amounts already paid by State Farm, Policy [26-2] at 22.[4]

Plaintiffs argue that "[t]his very Court has ruled that a lay witness can reasonably infer the cause of storm damage," Mem. [30] at 4 (citing *Jackson v. State Farm Fire & Cas. Co.*, No. 1:23-CV-24-HSO-BWR, 2024 WL 1183670, at *9 (S.D. Miss. Mar. 19, 2024) ("*Jackson II*")), but that case is distinguishable. The issue in *Jackson II* was the cost of tree removal; the Court noted that the plaintiffs there might be able to offer admissible lay testimony on causation if, for example, "they witnessed the hurricane knock down trees on their property, or that they reasonably inferred that the hurricane knocked those trees down," *Jackson*, 2024

---

[4] Plaintiffs seek replacement of the HVAC unit. *See* Mem. [30] at 2-3. Mr. Duchmann testified that the HVAC unit failed because "I was told by the A/C guy that the compressor burnt up or went out, whatever, had a surge or something like that," and the unit stopped working "[a]fter Ida." Mr. Duchmann's Dep. [26-1] at 29. Mr. Duchmann stated, "I don't do A/C work. I hire that out. So when they tell me stuff about A/C, I just say okay." *Id.* at 17-18. Yet Plaintiffs rely upon Mr. Duchmann's lay causation testimony for the HVAC unit, and no expert has been designated to testify as to the cause of that loss.

WL 1183670, at *9, because such testimony would be rationally based on the witness's perception, *Jackson v. State Farm Fire & Cas. Co.*, No. 1:23-CV-24-HSO-BWR, 2024 WL 965613, at *11 (S.D. Miss. Mar. 6, 2024) ("*Jackson I*") (citing Fed. R. Evid. 701(a)).

In this case, however, it is beyond dispute that Mr. Duchmann did not witness the damage as it occurred, *see id.*; *Jackson II*, 2024 WL 1183670, at *9; Mr. Duchmann's Dep. [26-1] at 18 (testifying that he had not visited the Property for five or six years before the storm struck), and Plaintiffs have not adequately explained how a lay witness could reasonably infer the particular damages at issue in this case were caused by Hurricane Ida, *see* Mem. [30].  The damages at issue in this case are more nuanced and causation more difficult to determine.  *See Jackson II*, 2024 WL 1183670, at *9.   And Plaintiffs have not cited any controlling legal authority that any lay witness is qualified to offer opinions on causation as it pertains to any of the additional losses allegedly sustained in this case.

State Farm paid Plaintiffs for hauling debris, ceiling drywall replacement and labor, cleaning and painting the ceiling, and replacing approximately 23 square feet of shingles and other roof items.  *See* Ex. [26-4] at 3, 11-12.  Given the nature of the damage and the types of losses claimed by Plaintiffs, any testimony concerning the cause of additional losses would implicate scientific, technical, or other specialized knowledge within the scope of Rule 702.  *See, e.g.,* Fed. R. Evid. 702; *Dewey St. Church of Christ*, 2020 WL 7133003, at *4.  The Court will grant State Farm summary judgment to the extent Plaintiffs rely upon lay testimony because

they "cannot produce admissible evidence" to support causation. Fed. R. Civ. P. 56(c)(1)(B). As such, they cannot show any "accidental direct physical loss to the property described in Coverage A and Coverage B," Policy [26-2] at 22, beyond those for which State Farm has already made payment.[5]

b.    Plaintiffs' lack of a causation expert

In an effort to circumvent State Farm's argument that they lack a causation expert, Plaintiffs attempt to characterize Mr. Duchmann's deposition testimony as that of an expert, offered well after the expert designation deadline expired. *See* Mem. [30] at 7-8 (discussing Mr. Duchmann's background on September 10, 2024, in opposition to summary judgment); Order [7] at 4 (setting Plaintiffs' deadline to designate expert witnesses as April 3, 2024).

Even if Mr. Duchmann could somehow be considered a non-retained expert, such experts must be disclosed under Rule 26, which Plaintiffs admittedly never did in this case. *See* Fed. R. Civ. P. 26(a)(2)(A) (stating "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705"). Nor have Plaintiffs attempted

---

[5] Nor do Plaintiffs focus on the pertinent question, which is not what damage was caused by Hurricane Ida, but what additional Property damage is *covered* by the Policy. *See* Mem. [30]; *see also, e.g., Walker v. Century Sur. Co.*, No. 1:22-CV-350-MAC-CLS, 2023 WL 5198518, at *5 (E.D. Tex. July 17, 2023), *report and recommendation adopted*, No. 1:22-CV-350-MAC, 2023 WL 5193439 (E.D. Tex. Aug. 10, 2023) (holding that, because the plaintiffs' evidence "fail[ed] to address the critical distinction between 'covered' damage as defined by the policy and damage that was 'caused' by Hurricane Laura but not necessarily covered by the policy (such as water entering through the AC ducts) Plaintiffs' non-expert evidence [was] insufficient to carry their summary judgment burden," and the plaintiffs failed to demonstrate a genuine issue of material fact as to causation).

14

to make a late designation of Mr. Duchmann or shown that the failure to provide the requisite Rule 26 disclosures was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); L.U. Civ. R. 26(a)(2) ("Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting introduction of that evidence at trial.").

And Plaintiffs have not sufficiently demonstrated that Mr. Duchmann is otherwise "qualified as an expert by knowledge, skill, experience, training, or education" to opine as to causation. Fed. R. Evid. 702. For example, as to the HVAC unit, Mr. Duchmann admits that he does not "do A/C work," "hire[s] that out," and "just say[s] okay" "when they tell [him] stuff about A/C." Mr. Duchmann's Dep. [26-1] at 17-18. Even if he were somehow minimally qualified, Plaintiffs must show that Mr. Duchmann's causation testimony would assist the trier of fact, is based on sufficient facts or data, and is the product of reliable principles and methods, and that he reliably applied the principles and methods to the facts of this case. *See* Fed. R. Evid. 702; *Kim v. Am. Honda Motor Co., Inc.*, 86 F.4th 150, 160 (5th Cir. 2023). They have not done so.

In sum, Plaintiffs have not offered any expert causation testimony to support their argument for additional coverage under the Policy, and Mr. Duchmann's lay

testimony is insufficient to support their coverage claims.  State Farm is entitled to summary judgment on the breach of contract claim in Count I of the Complaint.

C.    <u>Plaintiffs' remaining claims</u>

Plaintiffs' remaining claims are for bad faith breach of contract (Count II), intentional breach of contract (Count III), breach of the covenant of good faith and fair dealing (Count IV), negligent infliction of emotional distress (Count V), and wrongful denial or wrongful failure to adequately pay the claim (Count VI).  These claims essentially seek punitive damages due to bad faith denial of coverage, or extra-contractual damages under *Veasley*.  *See* Compl. [1-1] at 4-6.

Plaintiffs have conceded their punitive damage claims.  Mem. [30] at 9.  And because they cannot show that State Farm owed them coverage for any additional loss under the Policy, as a matter of law, Plaintiffs' remaining claims cannot survive summary judgment.  *See Porter v. Grand Casino of Miss., Inc.-Biloxi*, 138 So. 3d 952, 957 (Miss. Ct. App. 2014), *aff'd sub nom. Porter v. Grand Casino of Miss., Inc.*, 181 So. 3d 980 (Miss. 2016) ("Because [the plaintiff's] loss was not covered, her claim for bad-faith denial of coverage against State Farm necessarily fails as a matter of law.").  Nor can Plaintiffs receive *Veasley* damages because Plaintiffs have not presented any evidence tending to show that State Farm denied coverage without an arguable basis.  *See Fulton v. Miss. Farm Bureau Cas. Ins. Co.*, 105 So. 3d 284, 288 (Miss. 2012); *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 200

16

(Miss. 2002).  State Farm is entitled to summary judgment on Plaintiffs' remaining claims.[6]

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant State Farm Fire and Casualty Company's Motion [26] for Summary Judgment is **GRANTED**, and Plaintiffs' claims in the Complaint [1-1] are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this the 5th day of December, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Plaintiffs advance a negligent infliction of emotional distress claim in Count V, but this is based upon State Farm's alleged failure to adequately pay a covered claim, *see* Compl. [1-1] at 5-6, so Count V fails for the same reasons as Plaintiffs' other contractual and extracontractual claims, *see id.*  Even if it were treated as an independent claim, Plaintiffs have pointed to no evidence of "injury or demonstrable harm, whether it be physical or mental," that was reasonably foreseeable to State Farm.  *Goode v. Walmart, Inc.*, 372 So. 3d 149, 164 (Miss. Ct. App. 2023).  This is fatal to a negligent infliction of emotional distress claim.  *See id.*